STATE, Respondent, v. ERICKSON, Appellant.

(146 N. W. 1071.)

**1. Criminal Law—Larceny—Sufficiency of Evidence—Identity of Defendant and Property.**

In a prosecution for larceny, where the only evidence tending to connect defendant with the actual taking of the cattle alleged to have been stolen by him, is that of a witness who testified that, while working on the top of a building he saw, some three-quarters of a mile away, riding on horseback, a man and a woman whom he recognized as defendant and his sister, and that afterwards, from the same point, he saw, over a mile away, two parties whom he took to be the same parties, driving "five or six or seven head of cattle," a different number from that of the cattle alleged to have been stolen, **held,** that the evidence was insufficient to support a conviction.

**2. Criminal Law—New Trial—Newly Discovered Evidence—Identity of Defendant.**

In a prosecution for cattle theft, the state having relied on testimony that a witness, while working on a building, recognized accused over three-quarters of a mile away, and who took it to be defendant whom he saw from the same point, over a mile away, driving cattle supposed to be those stolen, **held,** that newly discovered evidence that another, also working on the same building and acquainted with accused, could not distinguish whether the persons driving the cattle were men or women, nor recognize accused, warrants a new trial.

(Opinion filed April 27, 1914.)

Appeal from Circuit Court, Meade County. Hon. WILLIAM G. RICE, Judge.

Louis Erickson, the defendant, was convicted of larceny of cattle, and he appeals. Reversed.

· *John T. Milek,* and *Harry P. Atwater,* for Appellant.

The defendant is not connected in any way except by the very unsatisfactory evidence upon the part of the State, of James Lodge.

The most that can be said is that Lodge saw someone, and that his impression was that it was Erickson, but there is

no evidence that at that time the person he saw was driving the Christensen cattle, or that the cattle that he was driving were in any way connected either with the trail made by the missing cattle or that the cattle he was driving were the Christensen cattle.

Lodge could not have identified defendant at any such distance. Dr. Gross, "Criminal Investigations," page 271.

The evidence was insufficient to warrant conviction. People v. Mullen, 99 N. Y. Supp. 227; State v. Lindley, 13 S. D., 288; 83 N. W. 257; Wright v. State, 32 N. W., 576; Casey v. State, (Neb.) 29 N. W., 264.

The newly discovered evidence warrants granting a new trial.

*Royal C. Johnson, Attorney General, M. Harry O'Brien, Assistant Attorney General, Claude C. Gray, State's Attorney,* for Respondent.

The other testimony, in connection with that of James Lodge, shows beyond doubt that the Ericksons came north in the forenoon of August 9, 1912, took possession of the cattle in question and drove them down to the old John Erickson ranch on Belle Fourche River and placed them in the corral to feed them preliminary to a long drive.

It is not uncommon for a farmer to recognize his neighbor with his team at a distance of a mile and even a mile and a half.

The Davis affidavit does not sufficiently show that the persons mentioned are the same two testified to by Lodge. If the affidavits offered in support of this ground for a new trial are inherently improbable or inconsistent, a new trial will be refused. 29 Cyc. 905.

WHITING, J. Appellant was convicted of stealing eight head of cattle. From the judgment of conviction and order denying a new trial he has appealed. Upon this appeal he urges three matters: (1) lack of proof of venue; (2) insufficiency of the evidence to justify verdict; (3) right of new trial upon ground of newly discovered evidence.

The first contention is wholly without merit.

[1] The state claims that the evidence directly connects the defendant with the taking of the property and furthermore that the property was found in his possession soon after it was taken which possession was not satisfactorily explained. There can be no

question but that the cattle in question were stolen by someone, and the jury were perhaps justified in inferring that certain members of appellant's family were parties to the theft as there was some slight evidence showing exercise of dominion over these cattle by sisters of appellant. The only evidence tending to connect appellant with the actual taking of the cattle is the evidence of one Lodge who testified that, while working on the top of a building, he saw, at a distance of some three-quarters of a mile, two parties, one a man the other a woman, riding horseback; that he recognized them as appellant and one of his sisters—but which sister he could not say; that, from the same point, he afterwards saw, at a distance of over a mile, two parties, whom he took to be the same parties, driving "five or six, or seven head of cattle." We find no evidence from which it could be fairly presumed that this particular bunch of stock was the stock stolen—for all the evidence shows, there may have been a dozen bunches of stock driven along this road any day, furthermore, the number of cattle was different. Common experience teaches that, unless there was some striking peculiarity in appellant's style of riding, it would be absolutely impossible for one at a distance of three-fourths of a mile to recognize him. Lodge did not attempt to explain how it was that he was able to recognize appellant at this distance. Conceding that the witness testified honestly and that he fully believed these parties to be appellant and one of his sisters, yet we do not believe a person should be convicted of a crime upon as weak evidence as this, unless there is strong corroboration. There is no evidence that appellant was seen by anyone at or about the place where these cattle were afterwards found, from the time the cattle were stolen until several days after they were found. While it is a fact that there was evidence showing that the cattle were found in a field near the home of appellant and his sisters, and that at least one of these sisters exercised certain dominion over the cattle in driving them from this field to another, yet the field in question had openings in the fence inclosing same through which openings these cattle could have passed without driving and through which other cattle had passed. When found in this field, it appears that these cattle were commingled with other cattle, the ownership of which is not shown. There was thus very slight evidence of possession in any of the Ericksons and absolutely none of

possession in appellant unless the testimony of Lodge should be held sufficient to show that one of the parties he saw was this appellant and that the cattle he was driving were these stolen cattle. All of the evidence tended to show that, from the morning after the theft until several days after these cattle were found by their owner, appellant was not at home and was in fact some twenty miles away from these cattle. There was some evidence that there were found at appellant's home, about the time these cattle were found by their owner, branding irons that had been recently used, also that these cattle had been recently branded; but this evidence could hardly be considered against appellant without some evidence showing that he was at home and thus showing that he had the opportunity to use such irons.

[2] Upon the motion for new trial there was submitted the affidavit of one Davis. To thoroughly understand the importance of the allegations therein and their competency, it is necessary to consider the history of the procedure in this case. There was a preliminary hearing sometime before the jury trial, but at this preliminary hearing the state did not place Lodge upon the stand; there was no evidence to apprise appellant that anyone claimed to have seen appellant in possession of these cattle. On the evening before the jury trial, there was another preliminary hearing at which Lodge was called as a witness, but Davis does not appear to have been called and there is nothing to show that appellant was advised that Davis was with Lodge at the time Lodge claims to have seen appellant. It would seem from Davis' affidavit that he had been called at the jury trial as a witness by the state but, if so, he was not placed upon the stand. From Davis' affidavit it appears that he was with Lodge on the house-top; that he saw the two people riding at a distance of some three-fourths of a mile; and that, though he has no known defect in eyesight, he was unable to distinguish so as to tell whether they were men or women and could not recognize them at all though he was personally acquainted with appellant. Bearing in mind that, when Lodge saw them at this distance, he attempts to recognize one of these parties as appellant, certainly, in view of the unreasonableness of this testimony, the jury would not have disregarded Davis' testimony if he had been placed upon the stand; furthermore, it must

be borne in mind that, when Lodge saw the two people driving the cattle, they were a half a mile farther off.

From the whole record we are satisfied that this appellant was convicted, not because the evidence warranted such conviction, but because the jury were satisfied, from certain evidence in relation to a shipment of cattle shipped by appellant to Omaha, that this defendant had been guilty of stealing other cattle. With this evidence before them, none of which was competent in this case, the jury did not sufficiently consider whether or not there was evidence sufficient to connect appellant with the particular offense of which he stood charged.

The judgment and order appealed from are reversed.